UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-01096-KK-MAAx** | Date: | May 11, 2026 |
|---|---|---|---|
| Title: | ***Samwaeil Danyal Esraeil Mikhaeil v. Ernesto Santacruz, Jr., et al.*** | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Petitioner(s): | Attorney(s) Present for Respondent(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (In Chambers) Order GRANTING Petition for Writ of Habeas Corpus [Dkt. 1]**

## I.
## INTRODUCTION

On March 9, 2026, petitioner Samwaeil Danyal Esraeil Mikhaeil ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents Ernesto Santacruz, Jr., Todd M. Lyons, James Janecka, Kristi Noem, and Pam Bondi ("Respondents").  ECF Docket No. ("Dkt.") 1, Petition ("Pet.").  On March 19, 2026, Respondents filed a Response to the Petition.  Dkt. 6, Response ("Resp.").  On the same day, Petitioner filed a Reply in support of the Petition.  Dkt. 7.

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, the Petition for Writ of Habeas Corpus is **GRANTED**.

## II.
## PROCEDURAL HISTORY

On March 9, 2026, Petitioner filed the operative Petition against Respondents, raising the following grounds for relief:

1.    **Ground One:** Violation of the Fifth Amendment Right to Procedural Due Process; and
2.    **Ground Two:** Violation of the Fifth Amendment Right to Substantive Due Process.

Pet. ¶¶ 30-41.  In support of the Petition, Petitioner submits copies of an Order by an Immigration Judge denying Petitioner's bond request for lack of jurisdiction, id. at 12-15, Ex. A, a Notice of Custody Determination and Order of Release on Recognizance issued by the U.S. Department of Homeland Security ("DHS"), id. at 16-24, Ex. B, and Petitioner's Form I-213, id. at 25-28, Ex. C.

On March 19, 2026, Respondents filed a Response to the Petition, asserting "Petitioner appears to be a member of the Bond Eligible Class certified in" Bautista v. Santacruz, 813 F. Supp. 3d 1084 (C.D. Cal. 2025), and, thus, is entitled to "at most . . . a bond hearing to be held before an Immigration Judge."  Resp. at 2.  Respondents do not address the merits of Petitioner's claims.  See generally id.

On the same day, Petitioner filed a Reply in support of the Petition.  Dkt. 7, Reply.

This matter, thus, stands submitted.

## III.
## RELEVANT FACTS

Petitioner is a national of Egypt.  Pet. ¶ 25.  On August 28, 2023, Petitioner entered the United States, seeking asylum based on his fear of religious persecution as a member of the Coptic Christian faith.  Id. ¶¶ 25, 27.  On the same day, DHS detained Petitioner and charged him as removable for entering the United States without being admitted or paroled.  Id. ¶ 25; see Ex. C. Sometime that year, DHS released Petitioner on an Order of Release on Recognizance pursuant to 8 U.S.C. § 1226 pending adjudication of his asylum claim.[1]  Pet. ¶ 25; see Ex. B.

Petitioner has no criminal history.  Pet. ¶ 27; see Ex. C.  Further, during his release, Petitioner "was working and paying his taxes."  Pet. ¶ 28.

On January 12, 2026, Petitioner appeared for a scheduled ICE check-in and was re-detained without notice or a pre-deprivation hearing.  Id. ¶ 26; see also Ex. C.  Petitioner was transferred to the Adelanto Detention Center, where he remains detained today.  Pet. ¶ 2.  On March 6, 2026, an Immigration Judge denied Petitioner's request for bond, finding the Immigration Court lacked jurisdiction to grant bond.  See Ex. A.  Petitioner's asylum application remains pending.  Pet. ¶ 29.

///

///

///

///

---

[1] Petitioner's Form I-213 represents Petitioner was "released on OREC" on the same day he entered the United States without inspection.  See Ex. C.  However, Petitioner's Order of Release on Recognizance is dated September 29, 2023.  See Ex. B.

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk DC

**IV.**
**PETITIONER'S RE-DETENTION WITHOUT NOTICE AND A PRE-DEPRIVATION HEARING VIOLATES HIS RIGHT TO PROCEDURAL DUE PROCESS[2]**

**A.    APPLICABLE LAW**

Under the Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  "Freedom from imprisonment . . . lies at the heart of the liberty" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  "[T]he Due Process Clause applies to all 'persons' within the United States," including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693.  As the Supreme Court recently reaffirmed, the Fifth Amendment "entitles [noncitizens] to due process of law in the context of removal proceedings." A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (citation modified) (quoting Trump v. J.G.G., 604 U.S. 670, 673 (2025)).

"Due process is flexible and calls for such procedural protections as the particular situation demands." United States v. Rivera-Valdes, 157 F.4th 978, 991 (9th Cir. 2025) (citation modified) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  In general, due process "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) (citation modified) (quoting Zinermon v. Burch, 494 U.S. 113, 127 (1990)).  To determine "whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation," courts apply the three-part balancing test established in Mathews v. Eldridge, 424 U.S. 319 (1976). Yagman v. Garcetti, 852 F.3d 859, 864 (9th Cir. 2017) (citation modified) (quoting Shinault, 782 F.3d at 1057).  Under the Mathews test, courts consider "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." Id. (citation modified) (quoting Shinault, 782 F.3d at 1057).

**B.    ANALYSIS**

Here, applying the Mathews test, the Court finds Respondents violated Petitioner's right to procedural due process by re-detaining him without notice and a pre-deprivation hearing.

**1.    The Private Interest Affected**

First, Petitioner has a substantial private interest in his continued freedom from immigration custody.  As noted, Petitioner was released pursuant to an Order of Release on Recognizance after his initial detention by DHS.  Pet. ¶ 25; see Ex. B.  Petitioner's release gave rise to "the most elemental of liberty interests – the interest in being free from physical detention by one's own government." Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004).

Moreover, while the government's initial decision to release Petitioner was discretionary, see 8 U.S.C. § 1226(a)(2) (providing a noncitizen "may" be released on "bond" or "conditional parole"

---

[2] Because the Court finds Petitioner is entitled to relief based on his procedural due process claim, the Court need not address Petitioner's substantive due process claim.

pending removal proceedings), "individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); accord Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). For over two years, Petitioner relied on this liberty interest to "be gainfully employed," "be with family and friends," and "form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482; see Pet. ¶ 28 (asserting Petitioner "was working and paying his taxes" before his re-detention).

Additionally, the fact ICE previously held Petitioner in custody when he first entered the United States "does not eliminate [his] liberty interest in remaining on release." Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) (citing Morrissey, 408 U.S. at 482)). To the contrary, the length of Petitioner's release since then only strengthens his interest in his continued freedom from detention. See Doe, 787 F. Supp. 3d at 1093 (finding the government's actions in conditionally allowing the petitioner to live outside immigration custody for five years created a protected liberty interest); Pinchi, 792 F. Supp. 3d at 1034 (finding the more than two years a petitioner lived outside of immigration custody "heightened" her liberty interest).

Hence, the Court finds Petitioner establishes a significant liberty interest in remaining out of immigration custody.

### 2.      The Risk of Erroneous Deprivation

Second, the risk of erroneous deprivation is significant without a pre-deprivation hearing. Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; see also Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). In releasing Petitioner on an Order of Release on Recognizance in 2023, the government necessarily determined Petitioner did not pose a significant flight risk or danger to the community. See 8 C.F.R. § 236.1(c)(8) (authorizing release where the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding"). Respondents offer no evidence or argument showing he no longer meets these criteria.[3] Indeed, the record suggests

---

[3] Petitioner's Form I-213 indicates ICE identified "8 violations of the ISAP program including a home visit" when he appeared for the January 12, 2026 check in and took him into custody "[a]s a result of these violations." Ex. C. However, the Form I-213 provides no further details or factual basis for these alleged violations. Notably, Respondents do not raise these alleged violations in their Response, let alone contend they provided a valid basis for re-detaining Petitioner. See generally Resp. These circumstances raise concerns Petitioner's re-detention was "pretextual" and "not in fact motivated by his" purported violations. E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). In any event, it does not appear ICE informed Petitioner of these alleged violations or provided him an opportunity to dispute them before re-detaining him. As noted, it is well-established due process generally "requires some kind of a hearing before the State deprives a person of liberty or property." Shinault, 782 F.3d at 1058 (emphasis added) (citation

---

otherwise, as Petitioner has no criminal history and was re-detained when complying with ICE's check-in requirements. Pet. ¶¶ 26, 27. The uncontroverted evidence before the Court thus "raises an inference that the government will have difficulty proving by clear and convincing evidence that Petitioner's detention is necessary to prevent danger to the community or his flight." Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025).

Given the significant risk of an erroneous deprivation of Petitioner's liberty, a pre-detention hearing is necessary to afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk. See Pinchi, 792 F. Supp. 3d at 1035 (finding the risk of erroneous deprivation was significant where neither party "had an opportunity to determine whether there is any valid basis for [the petitioner's] detention").

Respondents contend Petitioner is entitled, "at most," to a bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a). Resp. at 2. This argument is meritless. As an initial matter, to the extent Respondents concede Petitioner is a member of the Bond Eligible Class in Bautista, "Respondents have violated and continue to violate the law by detaining Bond Eligible Class members in contravention of the Final Judgment" in that case. Bautista, No. EDCV 25-01873-SSS-BFMx, 2026 WL 468284, at *9 (C.D. Cal. Feb. 18, 2026). Indeed, Respondents have already denied Petitioner a bond hearing, notwithstanding the Final Judgment in Bautista. See Ex. A. Moreover, nothing in the Final Judgment in Bautista limits the scope of relief for Petitioner and other similarly situated noncitizens to a bond hearing. To the contrary, Bautista establishes certain noncitizens are "entitled to receive bond hearings" at a minimum. Bautista, 813 F. Supp. 3d at 1117.

Beyond their misrepresentation of Bautista, Respondents offer no substantive reasoning or argument to support their proposition that Petitioner is not entitled to release. As discussed above, a pre-detention hearing is necessary given the unacceptably high risk of an erroneous deprivation of Petitioner's liberty, especially in light of Respondents' failure to make a reasoned argument to the contrary. A post-detention bond hearing would offer little more than "cold comfort" to Petitioner, whose "erroneous deprivation of liberty, along with the concomitant damage to [his] mental health and impact on [his] family, [has] already taken place." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1034 (N.D. Cal. 2025); accord Pinchi, 792 F. Supp. 3d at 1035 (finding "the inadequacy and unreliability of the government's proposed post-detention procedural safeguards" create "a substantial risk . . . that the period between [the petitioner's] arrest and any bond hearing will have served no valid government purpose"). Without the procedural safeguard of a pre-detention hearing, ICE could, as it appears to have done so here, unlawfully detain Petitioner at any time and for any reason, regardless of whether his detention serves any valid governmental interest. See Fernandez v. Semaia, No. EDCV 25-03412-SPG-MBKx, 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026) (noting post-deprivation relief could result in the petitioner's indefinite detention "without any process").

Hence, the Court finds a high risk of erroneous deprivation of Petitioner's liberty without a pre-deprivation hearing.

///

---

modified) (quoting Zinermon, 494 U.S. at 127). Accordingly, ICE's mere belief of "a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B., 795 F. Supp. 3d at 1322.

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk DC

### 3.    The Government's Interest

Third, Respondents identify no countervailing interest in re-detaining Petitioner, and the burden of a pre-detention hearing is low.  As noted, Respondents have not shown Petitioner poses a flight risk or danger to the community, especially considering his lack of criminal history and appearance at a check-in with ICE as ordered.  See Pet. ¶ 27; Ex. C.  In fact, Respondents fail to provide any reason for Petitioner's re-detention.  See Resp.  Thus, Respondents lack any governmental interest in continuing to detain Petitioner.  See Pinchi, 792 F. Supp. 3d at 1036 (finding no valid governmental interest where the government identified no changed circumstances regarding the petitioner's dangerousness or flight risk).  Further, while Respondents would have expended resources in providing Petitioner with notice and a hearing before re-detaining him, "those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." E.A. T.-B., 795 F. Supp. 3d at 1324.  Regardless, custody hearings in immigration court are "routine" and impose only a "minimal" cost.  Singh v. Bowen, No. EDCV 25-03034-CAS-PDx, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citation modified) (quoting Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025)).

Hence, the Court finds Respondents lack a significant countervailing interest in detaining Petitioner.

\*    \*    \*

In sum, the Court finds Petitioner establishes a significant liberty interest in his continued freedom from immigration custody, a high risk of erroneous deprivation, and no countervailing governmental interest in his detention, especially in light of Respondents' failure to oppose the merits of the Petition.  See generally Resp.  Accordingly, Petitioner's re-detention without a pre-deprivation hearing violates his right to procedural due process, and Petitioner is entitled to immediate release from Respondents' custody.

### V.
### CONCLUSION

For the reasons set forth above, the Court orders as follows:

1.    The Petition for Writ of Habeas Corpus is **GRANTED**;
2.    Respondents are **ORDERED** to immediately release Petitioner from their custody under the same conditions as his most recent Order of Release on Recognizance prior to his re-detention;
3.    Respondents are **ORDERED** to return any confiscated property and documents to Petitioner upon his release;
4.    Respondents are **ENJOINED** from re-detaining Petitioner pursuant to 8 U.S.C. § 1226(a) without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required; and

///

5.      Respondents are **ORDERED** to file a status report no later than May 13, 2026, regarding their compliance with this Order.

**IT IS SO ORDERED**. (JS-6)